# ORIGINAL

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES, | ) | Civil Action Number |
| PLAINTIFF, and the | ) | 02-CV-3793 JNE/RLE |
| | ) | |
| STATE OF MINNESOTA, | ) | |
| Plaintiff-Intervenor, | ) | AMENDED CONSENT DECREE |
| | ) | |
| v. | ) | |
| | ) | |
| GOPHER STATE ETHANOL L.L.C., | ) | |
| Defendant. | ) | |

FILED *SEP 0 5 2003*
RICHARD D. SLETTEN, CLERK

JUDGMENT ENTERED_____

DEPUTY CLERK'S INITIALS_____

## TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ......................................................... 3

II.    APPLICABILITY ............................................................................ 4

III.   FACTUAL BACKGROUND ........................................................... 4

IV.    COMPLIANCE PROGRAM SUMMARY ....................................... 5

V.     COMPLIANCE PROGRAM ............................................................ 8

       A.    INSTALLATION OF CONTROLS ........................................ 8

       B.    PERMITTING AND MODIFICATIONS ................................ 11

       C.    EMISSION LIMITS ............................................................... 12

       D.    DEMONSTRATION OF COMPLIANCE .............................. 16

       E.    RECORDKEEPING AND REPORTING ............................... 17

VI.    CIVIL PENALTY ........................................................................... 18

VII.   STIPULATED PENALTIES .............................................................. 19

VIII.  RIGHT OF ENTRY ........................................................................ 21

IX.    FORCE MAJEURE ....................................................................... 22

X.     DISPUTE RESOLUTION ............................................................... 25

XI.    GENERAL PROVISIONS ............................................................... 26

XII.   TERMINATION ............................................................................ 31

CONSENT DECREE

WHEREAS, Plaintiff, the United States of America (hereinafter "Plaintiff" or "the United States"), on behalf of the United States Environmental Protection Agency (herein, "EPA"), has filed twelve Complaints in the United States District Court for the District of Minnesota, one against each dry-process ethanol plant in Minnesota;

WHEREAS, in these Complaints Plaintiff alleged that each of the twelve plants, including Defendant, Gopher State Ethanol L.L.C. (herein, "Gopher State" or "Defendant"), commenced construction of a major emitting facility and major modifications of a major emitting facility in violation of the Prevention of Significant Deterioration ("PSD") requirements at Part C of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7470-7492, and the regulations promulgated thereunder at 40 C.F.R. § 52.21 (the "PSD Rules");

WHEREAS, Plaintiff further alleged in these Complaints that each dry-process ethanol plant, including Defendant, commenced construction of an emitting facility or modified an emitting facility without first obtaining the appropriate preconstruction permits and installing the appropriate air pollution control equipment required by 40 C.F.R. § 52.21 and the Minnesota State Implementation Plan ("SIP") approved pursuant to 42 U.S.C. § 7410;

WHEREAS, Plaintiff further alleged in these Complaints that potential air emissions from each dry-process ethanol plant, including Defendant's facility, were underestimated;

WHEREAS, this Consent Decree is being lodged simultaneously with the filing of the Complaint against Defendant;

WHEREAS, the State of Minnesota, through the Minnesota Pollution Control Agency

("MPCA" or "Plaintiff-Intervenor"), has, simultaneously with lodging of this Consent Decree, filed a Complaint in Intervention in each of the twelve actions commenced by Plaintiff;

WHEREAS, the Complaints in Intervention allege that each dry-process ethanol plant in Minnesota, including Defendant, has been in violation of the Minnesota SIP, by failing to obtain the appropriate pre-construction permits, by failing to accurately measure and report emissions, and by failing to install appropriate pollution control technology, in violation of applicable state laws, including Minnesota Rule ("Minn. R.") 7007.3000;

WHEREAS, Gopher State applied for a minor source permit from MPCA on November 20, 1997, and was issued the permit on April 15, 1998;

WHEREAS, Gopher State is a small facility that began ethanol production in mid-2000, and has produced ethanol in the following quantities:

• 2000 - 6.8 million gallons;

• 2001 - 9.8 million gallons;

WHEREAS, on December 11, 2000, Gopher State applied for an amendment to its MPCA permit in order to install a thermal oxidizer to reduce its emissions and odor related to its emissions;

WHEREAS, on February 21, 2001, the MPCA amended Gopher State's permit allowing it to install its thermal oxidizer;

WHEREAS, Gopher State's thermal oxidizer was installed in June, 2001, at a cost of approximately $1.2 million;

WHEREAS, Gopher State's thermal oxidizer has reduced the facility's emissions;

WHEREAS, on February 7, 2002, the MPCA met with representatives of the ethanol

plants in Minnesota, including Gopher State, to discuss VOC test results, VOC emissions, and related compliance issues;

WHEREAS, on June 21, 2002, Gopher State executed a letter of commitment to negotiate with EPA and MPCA to resolve potential violations;

WHEREAS, Gopher State has worked cooperatively with EPA and MPCA regarding the alleged violations and voluntarily provided requested information without information requests under Section 114 of the Act, 42 U.S.C. § 7414;

WHEREAS, the Defendant does not admit the violations alleged in the Complaints;

WHEREAS, the United States and Plaintiff-Intervenor (collectively "Plaintiffs"), and the Defendant have agreed that settlement of this action is in the best interest of the parties and in the public interest, and that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter; and

WHEREAS, Plaintiffs and the Defendant consent to entry of this Consent Decree without trial of any issues;

NOW, THEREFORE, without any admission of fact or law, and without any admission of the violations alleged in the Complaints, it is hereby ORDERED AND DECREED as follows:

I. JURISDICTION AND VENUE

1.      The Complaints state a claim upon which relief can be granted against the Defendant under Sections 113 and 167 of the Act, 42 U.S.C. §§ 7413 and 7477, and 28 U.S.C. §1355. This Court has jurisdiction of the subject matter herein and over the parties consenting hereto pursuant to 28 U.S.C. § 1345 and pursuant to Sections 113 and 167 of the Act, 42 U.S.C. §§ 7413 and 7477. Venue is proper under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and

under 28 U.S.C. § 1391(b) and (c).

## II.  APPLICABILITY

2.     The provisions of this Consent Decree shall apply to and be binding upon the
Plaintiffs, and upon the Defendant, as well as the Defendant's officers, employees, and agents
who are charged with implementing the terms of this Consent Decree and the approved Control
Technology Plan on behalf of Gopher State, and the Defendant's successors and assigns.  Before
termination of the Consent Decree, in the event Defendant proposes to sell or transfer its facility
(i.e., a plant or mill) subject to this Consent Decree, Gopher State shall advise such proposed
purchaser or successor-in-interest in writing of the existence of this Consent Decree, and shall
send a copy of such written notification by certified mail, return receipt requested, to the EPA
Regional Administrator for the region in which the facility is located before such sale or transfer,
if possible, but no later than the closing date of such sale or transfer.  The Defendant shall
provide a copy of the Consent Decree and the Control Technology Plan required in Paragraph 15
of this Consent Decree to the proposed purchaser or successor-in-interest.  In the event the
Defendant sells or otherwise assigns any of its right, title, or interest in its facility, prior to
termination of the Consent Decree, the conveyance shall not release the Defendant from any
obligation imposed by this Consent Decree unless the party to whom the right, title or interest
has been transferred agrees in writing to fulfill the obligations of this Consent Decree.

## III.  FACTUAL BACKGROUND AND APPLICABLE DEFINITIONS

3.   (a)    Gopher State is a "person" as defined in Section 302(e) of the Act, 42 U.S.C.
§7602(e), and the federal and state regulations promulgated pursuant to the Act.

(b)    Gopher State owns and operates a plant in St. Paul, Minnesota, for the

manufacture of ethanol. Gopher State receives whole corn which is then milled, cooked, and

fermented. After fermentation, the raw product is distilled to produce ethanol. Distillation

separates the liquid ethanol from the corn meal, which Gopher State may dry or sell as wet cake

for animal feed. The Plaintiffs allege that in the course of these manufacturing activities

significant quantities of particulate matter ("PM"), particulate matter at or below 10 microns

("PM$_{10}$"), carbon monoxide ("CO"), volatile organic compounds ("VOCs"), nitrogen oxides

("NOx") and other pollutants are generated, including hazardous air pollutants ("HAPs") listed

under Section 112(b)(1), 42 U.S.C. § 7412(b)(1) of the Act. The primary sources of these

emissions are the feed dryers, fermentation units, gas boilers, cooling cyclones, ethanol truck

load-out systems, and fugitive dust emissions from facility operations.

(c). Plaintiffs allege that Gopher State's ethanol plant in St. Paul, Minnesota is a "major

emitting facility," as defined by Section 169(1) of the Act, 42 U.S.C. § 7479(1), and the federal

and state regulations promulgated pursuant to the Act.

(d). Definitions: Unless otherwise defined herein, terms used in this Consent Decree

shall have the meaning given to those terms in the Act, and the federal and state regulations

promulgated pursuant to the Act.

## IV.   COMPLIANCE PROGRAM SUMMARY

4.     Gopher State shall implement a program of compliance at its ethanol production

and distillation facility to attain the emission levels required under this Consent Decree for

VOCs, PM, PM$_{10}$, CO, and NOx. Gopher State's compliance program is summarized below in

Paragraphs 5 through 10, and implemented through Paragraphs 15 through 17 and 26 through 28

of this Consent Decree.

5. Gopher State shall control and minimize fugitive particulate matter emissions from facility operations as set forth in the approved Control Technology Plan required under Part V of this Consent Decree and which is Attachment 1 to this Consent Decree.

6. Gopher State shall demonstrate compliance with the required emission levels on a unit-by-unit basis as set forth in the approved Control Technology Plan.

7. Gopher State shall demonstrate compliance with the emission limits established under this Consent Decree by the use of performance testing, parametric monitoring, recordkeeping and reporting, or initial and periodic compliance testing, where appropriate, as set forth in the approved Control Technology Plan.

8. Gopher State shall maintain records to demonstrate compliance with New Source Performance Standards ("NSPS"), Part 60, Subparts Dc, Kb, and VV, and its fugitive dust management program.

9. Gopher State shall accept source-wide allowable emissions caps equivalent to 95 tons per year ("TPY"), for each pollutant, for VOCS, PM, $PM_{10}$, sulfur dioxide ("$SO_2$"), $NO_x$, and CO based on a 12-month rolling sum, rolled monthly, and recorded monthly.

10. Gopher State shall apply for a modification to its federally-enforceable operating permit to incorporate the 95 TPY allowable emission caps and the lower emission limits applicable to each unit as set forth in the approved Control Technology Plan.

11. For the effective period of the Consent Decree, Gopher State shall obtain a federally-enforceable permit prior to beginning construction or operation of any future modification that will result in a significant net emission increase as defined by 40 C.F.R. Part

52, but will not exceed the 95 TPY allowable emission caps. However, the modifications required in Part V Section A ("Installation of Controls and Applicable Emission Limits") and the approved Control Technology Plan of this Consent Decree and any modification that qualifies under Minnesota Rule 7007.1250 and 7007.1450 subp. 2 are excluded from the requirements of this Paragraph. For purposes of determining whether a modification will result in a significant net emissions increase, Gopher State shall use results from its initial compliance testing required under this Consent Decree and the approved Control Technology Plan to determine its past actual emissions baseline. Gopher State shall include in its application for the federally-enforceable permit, and MPCA shall propose to incorporate in the permit, the 95 TPY allowable emission caps, or a schedule to meet the 95 TPY allowable emission caps, and all emission limits (to the extent unaffected by the permit modification), monitoring and recordkeeping requirements as set forth in the approved Control Technology Plan and this Consent Decree, and Gopher State shall not contest what is contained in its permit application.

12.     If, as a result of any future modifications, prior to termination of the Consent Decree, the total limited potential emissions of VOCs, PM, $PM_{10}$, $SO_2$, $NO_x$, and CO will exceed the 95 TPY allowable emission caps, then Gopher State shall complete and submit for MPCA approval a source-wide PSD/NSR permit application that includes the approved Control Technology Plan requirements as set forth in this Consent Decree. In this situation, Gopher State shall obtain a PSD/NSR permit prior to beginning construction of the modifications.

13.     If Gopher State demonstrates, through results of compliance tests or evidence of operating conditions, that its facility has operated at or below the 95 TPY emission caps for 24 months, the termination section of this Consent Decree may be invoked and the facility shall be

treated as a synthetic minor for air permitting requirements.  Permit requirements for future

modifications will then be governed by applicable state and federal regulations.

14.    In any permit application required pursuant to this Consent Decree, Gopher State

shall request, and MPCA shall propose, that the emission limits, monitoring and recordkeeping

requirements of the approved Control Technology Plan and this Consent Decree be incorporated

into any existing or new permit issued to the source as federally-enforceable Title I permit

conditions.  Such emission limits, monitoring and recordkeeping requirements shall remain

applicable to the source unless and until changed through a permit amendment.  Gopher State

shall not contest what is contained in its permit application.  Requirements under this Consent

Decree that are excluded as Title I conditions under this Paragraph are NSPS Subparts Dc, Kb,

and VV, and the fugitive emission control program referenced in Paragraphs 15(j) and (e),

respectively.  In addition, the Consent Decree shall be referenced in the permit as the legal basis

for all applicable requirements created by the Consent Decree.

## V.    COMPLIANCE PROGRAM REQUIREMENTS

### A.    INSTALLATION OF CONTROLS AND APPLICABLE EMISSION LIMITS

15.    Gopher State shall implement a plan for the installation of air pollution control

technology ("Control Technology Plan") capable of meeting the following emission level

reductions for the identified units in subparagraphs (a) through (j).  Gopher State's Control

Technology Plan, which has been approved by Plaintiffs, is Attachment 1 to this Consent

Decree:

(a).    Feed Dryers: 95 percent reduction of VOC or

emissions no higher than 10 parts per million ("PPM") of VOC, 90

percent reduction of CO emissions or emissions no higher than 100

PPM CO, and reduction of PM and $PM_{10}$ based on operation of

pollution control technology specified in the approved Control Technology Plan and as established after initial performance testing pursuant to Paragraph 24 of this Consent Decree. A $NO_x$ emission factor shall be established after initial performance testing required pursuant to Paragraph 23 of this Consent Decree. The emission factor will be used to determine compliance with Paragraph 15(g). The following unit is subject to these limits: EU 050

(b)     Fermentation Units:  95 percent reduction of VOC or, if inlet is less than 200 PPM of VOC, then 20 PPM or lower of VOC. The following units are subject to this limit: EU 022-023, EU 030

(c)     Gas Boilers:  A $NO_x$ emission factor shall be established after initial performance testing required pursuant to Paragraph 23 of this Consent Decree, or approved AP-42 factors may be used. The emission factor will be used to determine compliance with Paragraph 15(g). The following units are subject to these limits: EU 001, EU 002

(d)     Cooling Cyclones:  VOC emission limit(s) shall be established pursuant to Paragraph 22 of this Consent Decree. The following unit is subject to this limit: EU 055

(e)     Fugitive Dust Control PM:  A program shall be developed for minimization of fugitive dust emissions from facility operations. The following area is subject to this program: FS 001

(f)     Ethanol Loadout:
Truck loadout: 95 percent reduction of VOC.
Railcar loadout: All railcars shall be dedicated as ethanol only.
The following unit is subject to this limit: FS 003

(g)     Additional Requirements for $NO_x$ Emission Units:
Establish a Group $NO_x$ limit based on 0.04 lbs of $NO_x$ per unit, per MMBtu at capacity. An adjustment for propane usage may be made for a designated period of time based on a limit of 0.08 lbs of $NO_x$ per MMBtu. Emission factors for each unit in this group shall be established during the initial performance test required in Paragraph 23 of this Consent Decree and will be used to calculate compliance with the Group $NO_x$ limit, based on actual fuel usage for all emission units in this group. The fuel used by this group as a whole shall not allow $NO_x$ emissions in excess of the Group $NO_x$ limit. The following units are subject to this limit: EU 050, EU 001-002, CE 010

(h).    Fugitive VOC: Implement and comply with the requirements of 40 C.F.R. Part 60, Subpart VV. The following unit is subject to these requirements: FS 004

(i).    Additional Requirements for Hazardous Air Pollutants ("HAPs"): Beginning no later than 180 days following the start-up of the last piece of control equipment required in the approved Control Technology Plan, Gopher State shall continually operate its facility so as not to exceed source-wide allowable emissions of 9.0 TPY for any single HAP or 24.0 TPY for all HAPs based on a 12-month rolling sum, rolled monthly, and recorded monthly. For the first eleven months, beginning no later than 180 days following start-up of the last piece of control equipment required in the approved Control Technology Plan, compliance with the 12-month rolling sum will be demonstrated based on the schedule to meet applicable emission caps as set forth in the approved Control Technology Plan. If, based on emissions testing as set forth in the approved Control Technology Plan, additional control measures are required to meet the 9.0 or 24.0 TPY emission caps, such control measures shall be implemented and included in the operating permit application required under Paragraph 17.

(j).    New Source Performance Standards (NSPS): Identify and implement applicable NSPS requirements codified at 40 C.F.R. Part 60. The following NSPS apply: NSPS subpart Dc (Small Industrial Commercial-Institutional Steam Generating Units less than 29 MW (100 million BTU/hour)); NSPS subpart Kb (Volatile Organic Liquid Storage Vessels); and NSPS subpart VV (Synthetic Organic Chemicals Manufacturing Industry Leak Detection, Monitoring and Repair Requirements).

(k).    Wet Cake Operations: Through July 10, 2003, wet cake production may take place during periods of dryer system and associated dryer control technology upset, breakdown or malfunction. During such periods of upset, breakdown or malfunction after July 10, 2003, wet cake production may only take place if emissions will not exceed the source-wide emission cap of 95 TPY or the source-wide allowable emission caps of 9.0 TPY for any single hazardous air pollutant or 24.0 TPY for all hazardous air pollutants. To demonstrate that emissions from wet cake production will not exceed the source-wide caps, Gopher State must quantify its emissions using a method agreed to by EPA and MPCA. If Gopher State's wet cake emissions have not been quantified, wet cake production is limited to the completion of the ethanol in process at the

time of the upset, breakdown or malfunction and no fermentation can be initiated until the dryer control technology is fully operational.

16.    Gopher State shall implement the approved Control Technology Plan in accordance with the schedule set forth in that plan. Gopher State's approved Control Technology Plan is incorporated by reference herein and made directly enforceable by Plaintiffs under this Consent Decree.

B.    PERMITTING AND MODIFICATIONS

17.    Source-wide Permit: Within 180 days following the start-up of the feed dryer control equipment required in the approved Control Technology Plan, but no later than the expiration of Air Emission Permit No. 12300019-003, Gopher State shall apply for a modification to its federally-enforceable operating permit(s) to incorporate the 95 TPV source-wide allowable emission caps as described in Paragraph 9. Gopher State may submit its reissuance application for Air Emission Permit No. 12300019-003 as part of the application required in this Paragraph.

18.    Future Modifications: During the period that Gopher State is subject to this Consent Decree, Gopher State shall obtain a federally-enforceable permit prior to beginning construction or operation of any future modification that will result in a significant net emission increase as defined by 40 C.F.R. Part 52, but will not exceed the 95 TPV allowable emission caps. However, the modifications required in Part V Section A ("Installation of Controls and Applicable Emission Limits") and the approved Control Technology Plan of this Consent Decree and any modification that qualifies under Minnesota Rule 7007.1250 and 7007.1450 subp. 2 are excluded from the requirements of this Paragraph. This permit shall incorporate the 95 TPV allowable emission caps, or a schedule to meet the 95 TPV allowable emission caps, as well as

the emission limits (to the extent unaffected by the permit modification), and monitoring and

recordkeeping requirements as set forth in the approved Control Technology Plan and this

Consent Decree, including the requirements establishing the emission level reductions within the

Control Technology Plan.

19.    In determining whether a future modification will result in a significant net

emissions increase, Gopher State cannot take credit for any emission reductions resulting from

the implementation of the approved Control Technology Plan for netting purposes as defined by

40 C.F.R. § 52.21(b)(3).  In addition, the emission reductions of PM, PM$_{10}$, NOx, SO$_2$, and CO

required under this Consent Decree and the applicable NSPS may not be used for any emissions

offset, banking, selling or trading program.  VOC emissions reductions up to 98 percent of the

uncontrolled feed dryer emissions may not be used for any emissions offset, banking, selling or

trading program.

20.    Gopher State shall obtain a PSD permit prior to beginning construction of any

future modifications during the effective period of the Consent Decree that will cause any

increase in its limited potential emissions of any pollutant regulated under the Act above the 95

TPY source-wide caps, or prior to relaxation of a federally-enforceable permit limit pursuant to

40 C.F.R. § 52.21(r)(4).

C.    EMISSION LIMITS

21.    Unit Emission Limit for VOC, CO, NOx:

Beginning no later than 180 days following the start-up of each piece of control

equipment required in its approved Control Technology Plan, Gopher State shall continually

operate each unit in accordance with the operating parameters set forth in the approved Control

Technology Plan.

22.    VOC Limit for Cooling Cyclone:

(a).    By no later than 90 days following the initial performance test of the cooling
cyclone as required in Paragraphs 15(d) and 28(a), Gopher State shall: (1) evaluate VOCs in the
post-baghouse emissions; (2) evaluate the technical feasibility and cost effectiveness of reducing
VOCs in the cooling cyclone emissions, either through additional control equipment or by
routing post-baghouse cooling cyclone emissions to the dryer control equipment; and (3) submit
to MPCA the evaluation information, a proposed VOC emission limit for the cooling cyclone,
and, if applicable, a schedule to install additional control equipment or to route cooling cyclone
emissions to existing control equipment.

(b).    MPCA will use the information provided by Gopher State to establish a VOC
emission limit for the cooling cyclone, to identify any VOC emission control that will be
required, and to establish a schedule for installation of, or routing to, VOC control equipment.
MPCA shall provide written notice to Gopher State of the established limit and any additional
required controls.  The contents of the notice, or if applicable, the results of Dispute Resolution
referred to in subsection (3) of this paragraph, shall be incorporated into and enforceable under
this Consent Decree.

1).    If MPCA determines that controls are required in addition to, or different
from, those proposed by Gopher State, Gopher State shall have 30 days from the date of the
written notice to provide MPCA with a schedule to install the controls.  The MPCA shall allow
Gopher State a reasonable time to install the required controls.

2).    If the limit established by the MPCA is more stringent than the limit

proposed by Gopher State, Gopher State shall have 60 days from the date of the installation of the VOC control equipment to comply with the established limit(s).

3).  If Gopher State contests the MPCA's proposed limit or MPCA's proposed controls, Gopher State shall have 60 days to invoke the Dispute Resolution process pursuant to Part X ("Dispute Resolution") and obtain a stay from the Court. Until a limit is established under the Dispute Resolution process herein, Gopher State shall comply with the emission limit(s) it proposed under Paragraph 22(a)(3).

23.  NOx Emission Factors:  Following the initial performance test as required in Paragraphs 15 (a), (c), and (g) and 28, Gopher State shall establish unit specific $NO_x$ emission factors that it will use to calculate actual $NO_x$ emissions to demonstrate compliance with Paragraph 15(g).  The method to determine compliance with the limit in Paragraph 15(g) is specified in the approved Control Technology Plan.

24.  Unit Emission Limit for PM and $PM_{10}$:  By no later than 45 days following the initial performance test of the control equipment for the feed dryer as required in Paragraphs 15 (a) and 28, Gopher State shall propose PM and $PM_{10}$ emission limits based on the data collected from initial performance testing and other available pertinent information.  Gopher State shall immediately comply with the proposed emission limit.  MPCA will use the data collected and other available pertinent information to establish limits for PM and $PM_{10}$.  MPCA shall provide written notice to Gopher State of the established limit and the established limit shall be incorporated into and enforceable under this Consent Decree.  If Gopher State contests the MPCA's proposed limit, Gopher State shall have 60 days to invoke the Dispute Resolution process pursuant to Part X ("Dispute Resolution") and obtain a stay from the Court.  Until a limit

is established under the Dispute Resolution process herein, Gopher State shall comply with the emission limit(s) it proposed under this Paragraph.

25.     Unit Operating Permits: Within 180 days following the start-up of the feed dryer control equipment required in its approved Control Technology Plan, but no later than the expiration of Air Emission Permit No. 1230019-003, Gopher State shall apply for modification to its federally-enforceable operating permit to incorporate the emission limits, monitoring parameters, and recordkeeping set forth in the approved Control Technology Plan and this Consent Decree.

26.     Source-wide Caps:

(a).     Beginning no later than 180 days following start-up of the last piece of control equipment required in its approved Control Technology Plan, Gopher State shall continually operate its facility so as not to exceed the source-wide allowable emission caps of 95 TPY for each pollutant for VOCs, PM, $PM_{10}$, SO, $NO_x$, and CO based on a 12-month rolling sum, rolled monthly, and recorded monthly. For the first eleven months, beginning no later than 180 days following start-up of the last piece of control equipment required in the approved Control Technology Plan, compliance with the 12-month rolling sum will be demonstrated based on a schedule to meet applicable emissions caps as set forth in the approved Control Technology Plan. This provision shall survive termination of this Consent Decree until the 95 TPY emission caps are amended by or incorporated into a federally-enforceable permit for the facility.

(b).     Beginning no later than 180 days following start-up of the last piece of control equipment required in its approved Control Technology Plan, Gopher State shall continually operate its facility so as not to exceed the source-wide allowable emission caps of

9.0 TPY for any single hazardous air pollutant or 24.0 TPY for all hazardous air pollutants based on a 12-month rolling sum, rolled monthly, and recorded monthly. For the first eleven months, beginning no later than 180 days following start-up of the last piece of control equipment required in the approved Control Technology Plan, compliance with the 12-month rolling sum will be demonstrated based on a schedule to meet applicable emissions caps as set forth in the approved Control Technology Plan. This provision shall survive termination of this Consent Decree until the 9.0 TPY and 24.0 TPY emission caps are amended by or incorporated into a federally-enforceable permit for the facility.

D.   DEMONSTRATION OF COMPLIANCE

27.   Gopher State shall demonstrate continuous compliance with the emission limits established under this Consent Decree by the use of parametric monitoring, recordkeeping and reporting, as set forth in the approved Control Technology Plan.

28.   By no later than 180 days following the start-up of the feed dryer control equipment required in the approved Control Technology Plan, Gopher State shall demonstrate through emissions testing of the feed dryer, fermentation units, and boilers as specified in the approved Control Technology Plan ("Initial Performance Test"), conducted in accordance with MPCA and U.S. EPA approved test protocol, that it has met the required destruction efficiency and/or emission limits for those units. Gopher State shall follow all testing requirements in Minnesota Rule 7017. Gopher State shall retest the dryer for VOCs, CO, PM, and $PM_{10}$ no less than annually for the effective period of the Consent Decree. Gopher State shall retest all other units in accordance with MPCA's policy regarding performance testing frequency.

28.a.   By no later than 60 days following the start-up of the baghouse required in the

approved Control Technology Plan, Gopher State shall conduct emissions testing of the cooling cyclone as specified in the approved Control Technology Plan, conducted in accordance with MPCA and U.S. EPA approved test protocol. Gopher State shall follow all testing requirements in Minnesota Rule 7017 and shall retest the cooling cyclone in accordance with MPCA's policy regarding performance testing frequency.

29.     Gopher State shall maintain control technology performance criteria monitoring data and records as set forth in the approved Control Technology Plan, and shall make them available to the Plaintiffs upon demand as soon as practicable.

E.     RECORDKEEPING AND REPORTING REQUIREMENTS

30.     Beginning with the first full calendar quarter following lodging of this Consent Decree, Gopher State shall submit written reports within 30 days following each calendar quarter to MPCA and U.S. EPA that itemize Consent Decree requirements and the approved Control Technology Plan requirements, the applicable deadlines, the dates the tasks were completed, unit emissions data and data to support Gopher State's compliance status with the terms of this Consent Decree. Reports shall be sent to the addresses identified in Paragraph 64 ("Notice"). Emissions data may be submitted in electronic format.

31.     Gopher State shall preserve and retain all records and documents now in its possession or control, or which come into its possession or control, that support the reporting and compliance requirements under this Part for a period of three years following the termination of this Consent Decree, unless other regulations require the records to be maintained longer.

32.     All notices, reports or any other submissions from Gopher State shall contain the

following certification and may be signed by an owner or operator of the company responsible

for environmental management and compliance:

"I certify under penalty of law that I have personally examined the
information submitted herein and that I have made a diligent
inquiry of those individuals immediately responsible for obtaining
the information and that to the best of my knowledge and belief,
the information submitted herewith is true, accurate, and complete.
I am aware that there are significant penalties for submitting false
information, including the possibility of fine and imprisonment."

## VI. CIVIL PENALTY

33. Within thirty (30) calendar days of entry of this Consent Decree, the Defendant shall

pay to the Plaintiffs a civil penalty pursuant to Section 113 of the Act, 42 U.S.C. § 7413, in the

amount of $18,904 (Eighteen Thousand Nine Hundred and Four Dollars). Pursuant to the Act,

the following factors were considered in determining a civil penalty, in addition to other factors

as justice may require: the size of the business, the economic impact of the penalty on the

business, the violator's full compliance history and good faith efforts to comply, the duration of

the violation, payment by the violator of penalties previously assessed for the same violation, the

economic benefit of noncompliance, and the seriousness of the violation.

34.     Of the total penalty, $9,452, shall be paid to the United States by Electronic

Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current

EFT procedures, referencing the USAO File Number and DOJ Case Number 90-5-2-1-07784,

and the civil action case name and case number of the District of Minnesota. The costs of such

EFT shall be Gopher State's responsibility. Payment shall be made in accordance with

instructions provided to Gopher State by the Financial Litigation Unit of the U.S. Attorney's

Office in the District of Minnesota. Any funds received after 11:00 a.m. (EST) shall be credited

on the next business day. Gopher State shall provide notice of payment, referencing the USAO File Number and DOJ Case Number 90-5-2-1-07784, and the civil action case name and case number, to the Department of Justice and to EPA, as provided in Paragraph 64 ("Notice"). The total remaining amount, $9,452 in civil penalties, shall be paid to the Plaintiff-Intervenor the State of Minnesota, made in the form of a certified check payable to the Minnesota Pollution Control Agency and delivered to:

Enforcement Penalty Coordinator
Minnesota Pollution Control Agency
520 Lafayette Road N
St. Paul, Minnesota 55155-4194

35.     The Defendant shall pay statutory interest on any overdue civil penalty or stipulated penalty amount at the rate specified in 31 U.S.C. § 3717. Upon entry of this Consent Decree, this Consent Decree shall constitute an enforceable judgment for purposes of post-judgment collection in accordance with Rule 69 of the Federal Rules of Civil Procedure, the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001-3308, Minnesota Statute Chapter 16D and other applicable federal and state authority. The Plaintiffs shall be deemed a judgment creditor for purposes of collection of any unpaid amounts of the civil and stipulated penalties and interest.

36.     No portion of the $18,904 civil penalty to be paid by Gopher State shall be used to reduce its federal or state tax obligations.

VII. STIPULATED PENALTIES

37.     The Defendant shall pay stipulated penalties in the amounts set forth below to the Plaintiffs, to be paid 50 percent to the United States and 50 percent to the Plaintiff-Intervenor, for the following:

(a).    for each day of failure to propose PM, $PM_{10}$, and VOC emissions limits under Paragraphs 22 and 24:

| | |
|---|---|
| 1st through 30th day after deadline | $ 250 |
| 31st through 60th day after deadline | $500 |
| Beyond the 60th day | $1000 |

(b).    for each day of failure to meet the deadlines for installation of control technology systems set forth in the Control Technology Plan and applying for, or obtaining, permits under Paragraphs 17, 18, 20, and 25:

| | |
|---|---|
| 1st through 30th day after deadline | $800 |
| 31st through 60th day after deadline | $1,200 |
| Beyond 60th day | $2,000 |

(c).    for failure to conduct a compliance test as required by Paragraph 28, per day per unit:

| | |
|---|---|
| 1st through 30th day after deadline | $250 |
| 31st through 60th day after deadline | $500 |
| Beyond 60th day | $1,000 |

(d).    for failure to demonstrate compliance with emission limits set forth in the approved Control Technology Plan or emission limits set pursuant to Part V Section C ("Emission Limits"): $5000 per emissions test for each pollutant

(e).    for each failure to submit reports or studies as required by Part V Section E ("Recordkeeping and Reporting Requirements") of this Consent Decree, per day per report or notice:

| | |
|---|---|
| 1st through 30th day after deadline | $250 |
| 31st through 60th day after deadline | $500 |
| Beyond 60th day | $1,000 |

(f)     for failure to pay or escrow stipulated penalties, as specified in Paragraphs 38 and 39 of this section, $500 per day per penalty demand.

(g)     for failure to notify the Plaintiffs pursuant to Paragraph 2 of Gopher State's sale or transfer of the facility, $250 per day.

38.     Gopher State shall pay stipulated penalties upon written demand by the Plaintiffs no later than thirty (30) days after Defendant receives such demand. Stipulated penalties shall be paid to the Plaintiffs in the manner set forth in Part VI ("Civil Penalty") of this Consent Decree.

39.     Should Gopher State dispute its obligation to pay part or all of a stipulated penalty, it may avoid the imposition of the stipulated penalty for failure to pay a penalty due to the Plaintiffs by placing the disputed amount demanded by the Plaintiffs, not to exceed $20,000 for any given event or related series of events at any one plant, in a commercial escrow account pending resolution of the matter and by invoking the Dispute Resolution provisions of Part X within the time provided in Paragraph 38 for payment of stipulated penalties. If the dispute is thereafter resolved in Defendant's favor, the escrowed amount plus accrued interest shall be returned to the Defendant. Otherwise the Plaintiffs shall be entitled to the escrowed amount that was determined to be due by the Court plus the interest that has accrued on such amount, with the balance, if any, returned to the Defendant.

40.     The Plaintiffs reserve the right to pursue any other remedies for violations of this Consent Decree to which they are entitled. The Plaintiffs will not seek stipulated penalties and

civil or administrative penalties for the same violation of the Consent Decree.

VIII. RIGHT OF ENTRY

41.     Any authorized representative of the EPA or MPCA, or an appropriate federal or
state agency, including independent contractors, upon presentation of proper credentials and in
compliance with the facility's safety requirements, shall have a right of entry upon the premises
of Gopher State's plant identified herein at Paragraph 3(b) at any reasonable time for the purpose
of monitoring compliance with the provisions of this Consent Decree, including inspecting plant
equipment, and inspecting and copying all records maintained by Defendant required by this
Consent Decree. Nothing in this Consent Decree shall limit the authority of EPA and MPCA to
conduct tests and inspections under Section 114 of the Act, 42 U.S.C. § 7414, and Minnesota
Statute §§ 15.04 and 116.091 or any other applicable law.

IX. FORCE MAJEURE

42.     If any event occurs which causes or may cause a delay or impediment to
performance in complying with any provision of this Consent Decree, Defendant shall notify the
Plaintiffs in writing as soon as practicable, but in any event within twenty (20) business days of
when Defendant first knew of the event or should have known of the event by the exercise of due
diligence. In this notice Defendant shall specifically reference this Paragraph of this Consent
Decree and describe the anticipated length of time the delay may persist, the cause or causes of
the delay, and the measures taken or to be taken by Defendant to prevent or minimize the delay
and the schedule by which those measures will be implemented. Defendant shall adopt all
reasonable measures to avoid or minimize such delays.

43.     Failure by Defendant to provide notice to Plaintiffs of an event which causes or

may cause a delay or impediment to performance may render this Part IX voidable by the

Plaintiffs as to the specific event for which the Defendant has failed to comply with such notice

requirement, and, if voided, is of no effect as to the particular event involved.

44.    The United States or MPCA shall notify the Defendant in writing regarding the

Defendant's claim of a delay or impediment to performance as soon as practicable, but in any

event within thirty (30) days of receipt of the Force Majeure notice provided under Paragraph

42. If the Plaintiffs agree that the delay or impediment to performance has been or will be

caused by circumstances  beyond the control of the Defendant, including any entity controlled by

the Defendant, and that the Defendant could not have prevented the delay by the exercise of due

diligence, the parties shall stipulate to an extension of the required deadline(s) for all

requirement(s) affected by the delay by a period equivalent to the delay actually caused by such

circumstances. The Defendant shall not be liable for stipulated penalties for the period of any

such delay.

45.    If the Plaintiffs do not accept the Defendant's claim that a delay or impediment to

performance is caused by a force majeure event, to avoid payment of stipulated penalties, the

Defendant must submit the matter to this Court for resolution within twenty (20) business days

after receiving notice of the Plaintiffs' position, by filing a petition for determination with this

Court. Once the Defendant has submitted this matter to this Court, the Plaintiffs shall have

twenty (20) business days to file its response to said petition.  If the Defendant submits the

matter to this Court for resolution and the Court determines that the delay or impediment to

performance has been or will be caused by circumstances beyond the control of the Defendant,

including any entity controlled by the Defendant, and that the Defendant could not have

prevented the delay by the exercise of due diligence, the Defendant shall be excused as to that event(s) and delay (including stipulated penalties), for a period of time equivalent to the delay caused by such circumstances.

46.     The Defendant shall bear the burden of proving that any delay of any requirement(s) of this Consent Decree was caused by or will be caused by circumstances beyond its control, including any entity controlled by it, and that the Defendant could not have prevented the delay by the exercise of due diligence. The Defendant shall also bear the burden of proving the duration and extent of any delay(s) attributable to such circumstances. An extension of one compliance date based on a particular event may, but does not necessarily, result in an extension of a subsequent compliance date or of dates.

47.     Unanticipated or increased costs or expenses associated with the performance of the Defendant's obligations under this Consent Decree shall not constitute circumstances beyond the control of the Defendant, or serve as a basis for an extension of time under this Part. However, failure of a permitting authority to issue a necessary permit in a timely fashion is an event of Force Majeure where the Defendant has taken all steps available to it to obtain the necessary permit including but not limited to:

(a)     submitting a timely and complete permit application;

(b)     responding to requests for additional information by the permitting authority in a timely fashion; and

(c)     prosecuting appeals of any disputed terms and conditions imposed by the permitting authority in an expeditious fashion.

48.     Notwithstanding any other provision of this Consent Decree, this Court shall not

draw any inferences nor establish any presumptions adverse to either party as a result of

Defendant delivering a notice of Force Majeure or the parties' inability to reach agreement.

49.     As part of the resolution of any matter submitted to this Court under this Part IX,

the parties by agreement, or this Court, by order, may in appropriate circumstances extend or

modify the schedule for completion of work under this Consent Decree to account for the delay

in the work that occurred as a result of any delay or impediment to performance agreed to by the

Plaintiffs or approved by this Court. Defendant shall be liable for stipulated penalties for its

failure thereafter to complete the work in accordance with the extended or modified schedule.

## X.  DISPUTE RESOLUTION

50.     The dispute resolution procedure provided by this Part X shall be available to

resolve all disputes arising under this Consent Decree, including but not limited to emission

limits established by the MPCA in Part V Section C ("Emission Limits"), except as otherwise

provided in Part IX regarding Force Majeure.

51.     The dispute resolution procedure required herein shall be invoked upon the giving

of written notice by one of the parties to this Consent Decree to another advising of a dispute

pursuant to this Part X. The notice shall describe the nature of the dispute, and shall state the

noticing party's position with regard to such dispute. The party receiving such a notice shall

acknowledge receipt of the notice and the parties shall expeditiously schedule a meeting to

discuss the dispute informally not later than fourteen (14) days from the receipt of such notice.

52.     Disputes submitted to dispute resolution shall, in the first instance, be the subject

of informal negotiations between the parties. Such period of informal negotiations shall not

extend beyond thirty (30) calendar days from the date of the first meeting between

representatives of the Plaintiffs and the Defendant, unless the parties' representatives agree to

shorten or extend this period.

53.    In the event that the parties are unable to reach agreement during such informal

negotiation period, the Plaintiffs shall provide the Defendant with a written summary of their

position regarding the dispute. The position advanced by the Plaintiffs shall be considered

binding unless, within forty-five (45) calendar days of the Defendant's receipt of the written

summary of the Plaintiffs position, the Defendant files with this Court a petition which describes

the nature of the dispute, and includes a statement of the Defendant's position and any

supporting data, analysis, and/or documentation relied on by the Defendant. The Plaintiffs shall

respond to the petition within forty-five (45) calendar days of filing.

54.    Where the nature of the dispute is such that a more timely resolution of the issue

is required, the time periods set out in this Part X may be shortened upon motion of one of the

parties to the dispute.

55.    Notwithstanding any other provision of this Consent Decree, in dispute

resolution, this Court shall not draw any inferences nor establish any presumptions adverse to

either party as a result of invocation of this Part X or the parties' inability to reach agreement.

The final position of the Plaintiffs shall be upheld by the Court if supported by substantial

evidence in the record as identified and agreed to by all the Parties.

56.    As part of the resolution of any dispute submitted to dispute resolution, the

parties, by agreement, or this Court, by order, may, in appropriate circumstances, extend or

modify the schedule for completion of work under this Consent Decree to account for the delay

in the work that occurred as a result of dispute resolution.  Defendant shall be liable for

stipulated penalties for its failure thereafter to complete the work in accordance with the extended or modified schedule.

## XI. GENERAL PROVISIONS

57.     Effect of Settlement. This Consent Decree is not a permit; compliance with its terms does not guarantee compliance with any applicable federal, state or local laws or regulations. To the extent that the terms of this Consent Decree conflict with the terms of any air quality permit, the terms of this Consent Decree shall control during the effective period of the Consent Decree.

58.     Resolution of Claims. Satisfaction of all of the requirements of this Consent Decree constitutes full settlement of and shall resolve all past civil and administrative liability of the Defendant to the Plaintiffs for the violations alleged in the United States' and Plaintiff-Intervenor's Complaints and all civil and administrative liability of the Defendant for any violations at its facility based on facts and events that occurred during the relevant time period under the following statutory and regulatory provisions: (a) NSPS, 40 C.F.R. Part 60, including subparts Dc, Kb, and VV; (b) National Emission Standards for Hazardous Air Pollutants, 40 C.F.R. Part 63, pursuant to Sections 112(d) and 112(g) of the Act; (c) PSD requirements at Part C of the Act and the regulations promulgated thereunder at 40 C.F.R. § 52.21, and the Minnesota regulations which incorporate and/or implement the above-listed federal regulations in items (a) through (c); (d) all air permit requirements under Minn. R. 7007.0050-7007.1850; (e) air emissions fee requirements under Minn. R. 7002.0025-7002.0095; (f) performance standards for stationary sources under Minn. R. 7011.0010-7011.9990, and performance tests under Minn. R. 7017.2001-7017.2060; (g) notification, recordkeeping and reporting requirements under Minn.